People v Fulgencio (2019 NY Slip Op 00617)





People v Fulgencio


2019 NY Slip Op 00617


Decided on January 30, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 30, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2016-01636
 (Ind. No. 14-00747)

[*1]The People of the State of New York, respondent,
v
Perlagio Fulgencio, appellant.


Scott M. Bishop, White Plains, NY, for appellant, and appellant pro se.
Anthony A. Scarpino, Jr., District Attorney, White Plains, NY (Christine DiSalvo and William C. Milaccio of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Westchester County (Susan Cacace, J.), rendered February 2, 2016, convicting him of assault in the first degree and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
After a jury trial, the defendant was convicted of assault in the first degree and criminal possession of a weapon in the fourth degree arising out of his stabbing of the victim in the early morning of February 26, 2014. At trial, both the victim and his roommate testified about the events that led up to the stabbing. The victim testified that he was working as a manager at the Woodside Inn, a local neighborhood bar in Mount Vernon. According to the victim and his roommate, the roommate was an experienced bartender and was present at the bar to assist the victim, who was new to the job. Both the victim and the roommate testified that the assigned bartender employed by the bar, who had been on duty that evening, left at about 2:30 a.m., and that the victim, the roommate, and the defendant remained in the bar.
According to the victim, when he finished performing his closing duties at approximately 3:15 a.m., he asked the defendant, who had remained in the bar talking with the roommate, to leave. The victim testified that, despite his repeated requests to the defendant over a period of approximately two hours, the defendant refused to leave, and at approximately 5:45 a.m., the victim told the defendant that if he did not leave, the victim would call the police. The defendant then stabbed the victim with a knife multiple times and left the bar. The incident was captured by multiple security cameras in the bar.
"[A]n indigent defendant is guaranteed the right to counsel by both the Federal and New York State Constitutions (see US Const 6th Amend; NY Const, art I, § 6), but this entitlement does not encompass the right to counsel of one's own choosing" (People v Porto, 16 NY3d 93, 99). Moreover, " [t]he right of an indigent criminal defendant to the services of a court-appointed lawyer does not encompass a right to appointment of successive lawyers at defendant's option'" (People v King, 161 AD3d 772, 774, quoting People v Sides, 75 NY2d 822, 824). Thus, while a trial court has [*2]a duty to investigate complaints concerning counsel, whether to grant substitution lies within "the discretion and responsibility' of the trial judge" (People v Porto, 16 NY3d at 99, quoting People v Medina, 44 NY2d 199, 207; see People v Ward, 121 AD3d 1026, 1027).
Since a court's duty to consider substitution arises "only where a defendant makes a seemingly serious request[]'" (People v Porto, 16 NY3d at 100, quoting People v Sides, 75 NY2d at 824), a complaining defendant must make "specific factual allegations of serious complaints about counsel'" (People v Porto, 16 NY3d at 100, quoting People v Medina, 44 NY2d at 207; see People v Davis, 161 AD3d 1000, 1002). Where the defendant meets that burden, the court must make "at least a minimal inquiry'" to distinguish "meritorious complaints from disingenuous applications" (People v Porto, 16 NY3d at 100, quoting People v Sides, 75 NY2d at 825; see People v King, 161 AD3d at 774). " In determining whether good cause exists, a trial court must consider the timing of the defendant's request, its effect on the progress of the case and whether present counsel will likely provide the defendant with meaningful assistance'" (People v Porto, 16 NY3d at 100, quoting People v Linares, 2 NY3d 507, 510).
Here, even if the defendant's complaints about his counsel were sufficiently specific to trigger the Supreme Court's duty to make an inquiry (see People v Porto, 16 NY3d at 99-100; People v King, 161 AD3d at 774), the record demonstrates that the court properly discharged that duty (see People v Linares, 2 NY3d at 511; People v King, 161 AD3d at 774).
Contrary to the defendant's contention, the verdict was not against the weight of the evidence. The general rule is that "an intoxicated person can form the requisite criminal intent to commit a crime, and it is for the trier of fact to decide if the extent of the intoxication acted to negate the element of intent" (People v Zapata, 98 AD3d 539, 540 [internal quotation marks omitted]). Although the crime of assault in the first degree requires a showing of specific intent (see Penal Law § 120.10[1]), the jury's conclusion that the defendant was not so intoxicated as to be unable to form the requisite intent was supported by the weight of the evidence (see People v Fenelon, 148 AD3d 1051, 1052; People v Zapata, 98 AD3d at 540).
The defendant's contention, raised in his pro se supplemental brief, that trial counsel rendered ineffective assistance cannot be reviewed on this record and is more properly the subject of a motion pursuant to CPL article 440 (see People v Alzandani, 156 AD3d 648, 649; People v Rodriguez, 154 AD3d 968, 969). The defendant's speedy trial claim and contention that the People failed to honor a plea agreement, both raised in his pro se supplemental brief, are unpreserved for appellate review and also based on material dehors the record (see CPL 470.05[2]; People v Geritano, 158 AD3d 724, 725; People v Macaluso, 144 AD3d 947, 947). Finally, the defendant's challenge to the admission of the security video, also raised in his pro se supplemental brief, is unpreserved for appellate review to the extent that he argues that the security video was altered and, in any event, is entirely without merit (see People v Bonds, 128 AD3d 1083, 1083-1084).
RIVERA, J.P., AUSTIN, DUFFY and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court